[Crim. No. 39147. Second Dist., Div. One. Aug. 27, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
ARLANDERS JONES III, Defendant and Appellant.

**COUNSEL**

Paul Arthur Turner, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney Gener-

al, Edward T. Fogel, Jr., and Donald E. De Nicola, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## DEVICH, J.*—

### SUMMARY

An information was filed, October 22, 1979, in Los Angeles County Superior Court, charging defendant and appellant with the following criminal charges: count I, Penal Code section 207, kidnaping; counts II and III, Penal Code section 245, subdivision (a), assault by means of force likely to produce great bodily injury and with a deadly weapon; count IV, Vehicle Code section 20001, felony hit and run. In addition, counts I and II, alleged Penal Code section 12022.5, use of a firearm; counts II and III, alleged Penal Code section 12022, subdivision (a), armed with a firearm.

At a later date, August 4, 1980, an amendment was filed alleging prior convictions.

On November 3, 1980, after a trial by jury, the following occurred:

Count I, kidnaping, the jury was deadlocked and a mistrial declared with the charge being dismissed by the People at the time of sentencing; guilty of Penal Code section 240, simple assault, a lesser and necessarily included offense of the crime charged in count II; guilty count III, Penal Code section 245, assault with a deadly weapon; guilty count IV, Vehicle Code section 20001, felony hit and run.

In count III an armed allegation under Penal Code section 12022, subdivision (a), was found to be true.

Appellant's motion for a new trial was denied and probation and sentence were heard. Probation was denied with state prison imposed on count III, assault with a deadly weapon, mid term of three years, with an additional year consecutive, for Penal Code section 12022, subdivision (a), armed allegation enhancement, for a total of four years.

*Assigned by the Chairperson of the Judicial Council.

Count IV, felony hit and run, midterm two years concurrent to count III; count I, simple assault, the included offense, six months in the county jail concurrent to count II. The People dismissed count I, kidnaping, and agreed the prior allegations were deemed moot since they were filed with count I. Defendant appeals from the judgment with bail set pending appeal.

### STATEMENT OF FACTS

On September 20, 1979, at approximately 12:30 a.m., the victim in counts I and II, Verna Young, testified that after visiting a friend, she was en route to see her cousin named Tina. While walking on a public sidewalk, she was grabbed by an unidentified man and pulled into his car. The car was driven away. She struggled and the man pulled out a .38 caliber revolver. While driving, the man struck the victim with his hands. The man later stopped the car by Tina's house and pulled out the revolver and pointed it at the victim. Victim tried to get the weapon and was again struck several times by the man with his hands. She was also bitten on the shoulder by the unidentified man. The police arrived and the man left in his car, taking with him the victim's red tam hat.

A police officer testified to the condition of the victim Young after the alleged assault. There were bruises and a bite mark, but no signs of the victim being under the influence of a drug, narcotic or alcohol.

A police helicopter pilot and other police officers testified for the prosecution that shortly after the incident with Miss Young, defendant was involved in a high speed chase with the police. The vehicle driven by defendant was allegedly traveling 110 miles per hour, weaving through traffic, and ignoring stop signs and the traffic lights.

In the area of 73d and Main Street, defendant's vehicle struck a vehicle in the rear, driven by the victim in count III, Noe Pena. Mr. Pena's vehicle was flipped over from the impact and he sustained injuries along with his passenger.

Police officers who observed the collision further testified that after the collision, defendant's vehicle picked up speed, proceeded to 74th Street, and then made a right turn. Defendant stopped his vehicle about 50 yards from 74th and Main Streets, approximately a block and a half from the collision scene. Defendant's vehicle apparently decelerated at the time of the collision.

Defendant was arrested. A .38 caliber revolver and red tam hat were found in the defendant's vehicle. An altercation took place between the police officers and the defendant at the time of his arrest.

The defendant testified that he was flagged down by Miss Young. She got into his car, and after a discussion regarding PCP, she pulled a gun and asked defendant to buy it so she could purchase some PCP. He said no, and pushed the gun away. A struggle broke out. The car came to a halt, and defendant and Miss Young fell from the car. Appellant got a hold of the gun and threw it into his car. Defendant returned to his car, but something struck the defendant in his left ear. He did not recall anything about driving the car away. He did recall, however, that the police assaulted him at his car on 74th Street near Main, at the time of his arrest.

## APPELLANT'S CONTENTIONS

I The trial court improperly refrained from questioning appellant's trial lawyer about the allegation of incompetency leveled against the lawyer on appellant's motion for a new trial.

II The evidence was insufficient to support appellant's conviction on count III.

III The trial court erroneously instructed the jury on the issue of the criminal intent required to sustain a conviction for felonious assault.

IV The trial court erroneously failed to instruct *sua sponte* on the law of self-defense.

## I

Did the trial court improperly refrain from questioning appellant's trial lawyer about any allegations of incompetency claims by appellant in a motion for a new trial?

After defense counsel completed his motion for a new trial, the appellant was allowed by the trial court to set forth his reasons for a new trial. The principal thrust of his argument was that he was denied counsel, in that his court-appointed attorney was ineffective in the way he handled the case.

Penal Code section 1181 sets forth statutory grounds that when a verdict has been rendered on a finding made against the defendant, the court may upon his application, grant a new trial in the following cases only: (Thereafter the section sets out nine different subdivisions wherein a new trial may be granted.) (*People v. Sainz* (1967) 253 Cal.App.2d 496 [61 Cal.Rptr. 196].)

Nowhere within the nine subdivisions, is it set out that the trial court has the authority to allow a new trial for the reason of incompetency of counsel.

Therefore, for appellant to be successful in his argument, it would be necessary for him to seek a new trial on nonstatutory grounds where a failure to do so would result in a miscarriage of justice. (*People v. Whittington* (1977) 74 Cal.App.3d 806 [141 Cal.Rptr. 742].)

In passing upon a motion for a new trial, the trial court has very broad discretion, and this court would be reluctant to interfere with a decision granting or denying the motion unless there is a clear showing of an abuse of that discretion. (*People v. Davis* (1973) 31 Cal.App.3d 106 [106 Cal.Rptr. 897].)

But the trial court does have the jurisdiction to deal with the merits of a motion for a new trial on the grounds a defendant was denied his constitutional right to counsel. (*People v. McGill* (1970) 6 Cal.App.3d 953 [86 Cal.Rptr. 283]; *People v. Harrison* (1941) 46 Cal. App.2d 779 [117 P.2d 19].)

After all, the trial court is in the best position to make an initial determination, and intelligently evaluate whether counsel's acts or omissions were those of a reasonably competent attorney.

So appellant does have a standing to raise the right to counsel issue at the time of the hearing for a motion for a new trial.

However, once given that right what is the responsibility of the trial judge?

Appellant would request this court to adopt the principles set forth in *People v. Marsden* (1970) 2 Cal.3d 118 [84 Cal.Rptr. 156, 465 P.2d 44], wherein the trial court was found to have erred in refusing to listen

to defendant's reasons for his request to substitute counsel after the People had presented their case to the jury.

In the *Marsden* matter, the defendant was not allowed to enumerate any specific example, by the trial court, of inadequate representation, and was thereby found to have been deprived of a fair trial. The reviewing court found that the trial court could not have thoughtfully exercised its discretion in the matter without listening to his reasons for requesting a change of counsel.

A judicial decision made without giving a party an opportunity to present an argument or evidence in support of his contention is lacking in all the attributes of a judicial determination. (*Spector* v. *Superior Court* (1961) 55 Cal.2d 839 [13 Cal.Rptr. 189, 361 P.2d 909].)

The case at hand, however, does differ in its factual circumstances from *Marsden.* Appellant was allowed to set forth his reasons why he felt he was inadequately represented by counsel. Further, the claims in *Marsden* arose during trial. Here, appellant made no claim of unfair representation until his motion for a new trial. Had appellant made known his objections earlier, the trial court would have been in a position to inquire of the defendant and his counsel. And then, if in fact, the trial judge found some basis for appellant's objections, he could have intelligently discussed them with counsel and also reserved the objections and discussions on the record.

Since appellant has the burden of establishing counsel's ineffectiveness and proof of inadequacy, it posesses a greater air of reality if it is raised during trial rather than at a motion for a new trial, where mere speculation might take over.

Most of appellant's objections, as to the manner in which his trial counsel handled his defense, were items defendant could have made known to the trial court during trial, such as presentation of certain evidence, cross-examination of witnesses, and the making of timely objections.

The duty does rest with the trial court to offer any helpful suggestions to the defendant in presenting the basis of his complaints, and to determine if the appellant's complaints have any foundation.

But the trial judge could not make suggestions concerning matters of which he was not aware. He certainly did the only thing he could, he asked defense counsel if he had anything to say. To which, defense counsel said "Submit the motion, Your Honor." Nothing requires counsel to answer and rebut the objections. Based upon the circumstances, the trial judge must make his own determination whether the defendant has been denied effective or adequate counsel.

Any trial judge who has ever presided over a master calendar or criminal trial court has seen the helpless look or expression shown by an attorney whenever a defendant makes the bold claim he is not receiving proper representation.

What does counsel say? He is placed in a position of either defending himself, or risking the possible disclosure of information about his client, neither of which he desires to do. So as an alternative, he says nothing.

And that is what happened here. To rule an attorney must reply to the objections, or the case should be reversed is not reasonable, nor logical.

The important contention of defendant then becomes—was the defendant in the present case denied effective counsel?

In the case of *People* v. *Ibarra* (1963) 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], a standard was established to measure the constitutional right to effective aid in the preparation and trial of a case. The standard was that in order to obtain relief on appeal "It must appear that counsel's lack of diligence or competence reduced the trial to a 'farce or a sham.'"

The standard in *People* v. *Ibarra, supra*, was said to arise from a right under the due process clause of the Constitution, and not from the provision guaranteeing the right to the assistance of counsel. (*Diggs* v. *Welch* (D.C.Cir. 1945) 148 F.2d 667; *Jones* v. *Huff* (D.C.Cir. 1945) 152 F.2d 14.)

The courts now recognize the right to competent representation is found in the constitutional right to the assistance of counsel. (6th Amend. of the U.S. Const., and art. I, § 15, of the Cal. Const.)

This principle is predicated on the logical theory a defendant may receive ineffective assistance of counsel even though the trial has not been a farce or sham.

In *People* v. *Pope* (1979) 23 Cal.3d 412 [152 Cal.Rptr. 732, 590 P.2d 859], a history of the evaporation of the *Ibarra* standard (i.e., farce and sham) was set forth, with the court adopting a standard similar to one set out in *United States* v. *De Coster* (D.C.Cir. 1973) 487 F.2d 1197. The *De Coster* standard held that "a defendant is entitled to the reasonably competent assistance of an attorney acting as his diligent conscientious advocate."

From the *De Coster* standard, *People* v. *Pope, supra*, 23 Cal.3d 412, evolved the present standard of "reasonably competent representation."

It then becomes an issue whether trial counsel gave defendant reasonably competent representation.

This court is certainly aware of the heavy and onerous burdens placed upon the shoulders of counsel who represent criminal defendants. The actual tears of joy after obtaining what they honestly believed was a just acquittal, or the tears of sorrow when hearing a guilty verdict rendered for a client whom they believe to be innocent, and believing they might not have fulfilled their responsibility in obtaining an acquittal.

Before this court, or any court, declares that a defendant received representation that was not reasonably competent, it should carefully examine these facts which might give rise to such a finding. It is true, the first concern is directed towards the defendant receiving a just determination. But there is no reason why that determination can not be protected while at the same time assuring that counsel is not left out in the consideration.

Most of the objections proposed by this defendant to the trial court, as to his inadequate representation, had to do with failing to object to leading questions, the lack of effective cross-examination, and failing to present evidence of the alleged drug use of the victim, Miss Young.

■ The selection of potential witnesses involves tactical decisions within the control of trial counsel, and this should not be the basis for a claim of inadequate representation. ■ And failure of counsel to

make every available objection, however trivial, does not amount to incompetence. (*People* v. *Wiley* (1976) 57 Cal.App.3d 149 [129 Cal.Rptr. 13].)

Appellant does offer two areas that merit some discussion. One had to do with defendant's claim counsel did not appropriately argue the defense of unconsciousness, but instead that defendant left the scene of the altercation with Miss Young out of fear when such an argument contradicted the necessary element of unconsciousness.

Appellant testified on direct examination and cross-examination that he was hit in the ear after his altercation with Miss Young, and that he does not remember anything else until the police came up to his car. This time period becomes important because it was during this time that he drove the car and became involved in the collision and then left the scene.

CALJIC instructions No. 4.30[1] and No. 4.31[2] set out the definitions of an unconscious act; burden of proof, and presumption of consciousness.

A court must instruct on unconsciousness *sua sponte* if there is evidence of involuntary unconsciousness. (*People* v. *Tidwell* (1970) 3 Cal.3d 82 [89 Cal.Rptr. 58, 473 P.2d 762].)

However, the duty to instruct, *sua sponte*, in a criminal case on particular defenses and their relevance to the charged offense arises

---

[1]CALJIC No. 4.30 (1979 Revision):

"A person who commits an act while unconscious is not guilty of a crime.

"This rule of law applies to persons who are not conscious of acting but who perform acts while asleep or while suffering from a delirium of fever, or because of an attack of [psychomotor] epilepsy, a blow on the head, the involuntary taking of drugs or the involuntary consumption of intoxicating liquor, or any similar cause.

"Unconsciousness does not require that a person be incapable of movement.

"Evidence has been received which may tend to show that the defendant was unconscious at the time and place of the commission of the alleged offense for which he is here on trial. If, after a consideration of all the evidence, you have a reasonable doubt that the defendant was conscious at the time the crime was committed, he must be found not guilty."

[2]CALJIC No. 4.31 (1979 Revision):

"If the evidence establishes beyond a reasonable doubt that at the time of the commission of the alleged offense the defendant acted as if he were conscious, you should find that he was conscious, unless from all the evidence you have a reasonable doubt that he was in fact conscious at the time of the alleged offense.

"If the evidence raises a reasonable doubt that he was in fact conscious, you must find that he was then unconscious."

only if it appears that defendant is relying on such a defense, *or* if there is substantial evidence supportive of such a defense and the defense is not inconsistent with defendant's theory of the case. (*People* v. *Sedeno* (1974) 10 Cal.3d 703 [112 Cal.Rptr. 1, 518 P.2d 913].)

This limitation is necessary not only because it would be unduly burdensome to require more of a trial judge, but also because of the potential prejudice to defendant if instructions were given on defenses inconsistent with the theory relied on by him. (*People* v. *Sedeno, supra.*)

In the *Sedeno* case, the circumstances relating to an issue of unconsciousness were quite similar. The defendant received two blows to the head as opposed to one apparent blow here to defendant's ear; a subsequent police chase on foot in *Sedeno*, and a police vehicle chase in the present case; the treatment by a doctor in *Sedeno* after the arrest and a scuffle with the police where he was found to be active, and here treatment by a physician with no claim of possible unconsciousness until the time of the arrest and alleged beating by the police.

But in the present case, the unconsciousness instructions were given, while in *Sedeno* they were not. So how can the defendant complain counsel was inadequate where the necessary instructions on that issue have been presented to the trier of fact? The fact counsel may not have argued in the manner defendant wished may be based on the reasonable interpretation of counsel that the jury would not believe the unconsciousness theory.

Besides, the trial court gave instruction CALJIC No. 12.72, which states, "A vehicle driver who is rendered unconscious or is disabled by an accident so that he is incapable of performing any of the foregoing duties may not be held criminally liable for his failure to perform that duty."

The area of unconsciousness was well covered by counsel.

The other area of defendant's complaint that merits a limited note has to do with the mechanic's testimony regarding the repairs of defendant's automobile after the collision.

Appellant claims counsel was ineffective in being unable to qualify the witness as an expert, and therefore he should have obtained another expert's opinion.

As noted in *People* v. *Wiley, supra*, 57 Cal.App.3d 149, the selection of potential witnesses involves tactical decisions within counsel's control, and is not the basis for a claim of inadequate representation.

An examination of the record revealed that by direct examination counsel was able to get before the jury the problems with defendant's vehicle without qualifying the witness as an expert. This was done by counsel's continuous questioning and was certainly not the persistence of inadequate counsel but rather that of one who qualifies within the meaning of *People* v. *Pope, supra*, 23 Cal.3d 412, as having given defendant "reasonably competent representation."

Defendant did receive proper representation of counsel and the matter should not be reversed for that reason.

The issue raised by the People that defendant should have complained of the lack of counsel by way of a writ of habeas corpus is not applicable in the present case. This court was able to fully determine there was adequate representation by an examination of the record. No writ hearing was necessary.

## II

Defendant maintains his conviction in count III, assault with a deadly weapon, should be reversed for insufficient evidence to establish the requisite criminal intent.

Penal Code section 245, subdivision (a), states "Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment .... "

The requisite intent for a violation of this section is the intent to commit a battery. (*People* v. *Lathus* (1973) 35 Cal.App.3d 466 [110 Cal.Rptr. 921].)

*People* v. *Rocha* (1971) 3 Cal.3d 893, 899 [92 Cal.Rptr. 172, 479 P.2d 372], states: "An assault is an unlawful attempt, coupled with the present ability, to commit a violent injury on a person of another, or in other words, it is an attempt to commit a battery." (CALJIC No. 9.00.)

*People* v. *Covino* (1980) 100 Cal.App.3d 660, 661 [161 Cal.Rptr. 155], states: "Assault by means of force likely to produce great bodily injury does not require a specific intent to produce great bodily injury. The only intent required is that required in case of any assault, ... to attempt a battery or to intend an act the natural consequence of which is the application of force on the person of another."

The question then becomes whether the evidence showed that defendant in driving his vehicle in a manner which led to the collision is guilty of an assault with a deadly weapon or by force likely to produce great bodily injury. We think not.

A case cited by appellant and out of this same Division, is quite similar, *People* v. *Cotton* (1980) 113 Cal.App.3d 294 [169 Cal.Rptr. 814]. In the *Cotton* case, as well as this case, the vehicle was driven in an extremely reckless manner, in excess of 100 miles per hour. Additional traffic violations were noted in both cases. But more important, as reprehensible as the driving might be, in each case, evidence was lacking to show the drivers intended to commit a battery or an act the natural consequences of which is the application of force on the person of another.

There is no evidence to show or infer defendant drove his vehicle at the other car involved in the collision. The overwhelming evidence is defendant drove his car in a gross reckless manner which resulted in bodily injury to another. And as such, his driving, under the given circumstances of this case, constituted a violation of Vehicle Code section 23104, not Penal Code section 245, subdivision (a).

Vehicle Code section 23103 states: "Any person who drives any vehicle upon a highway in willful or wanton disregard for the safety of persons or property is guilty of reckless driving . . . ." Vehicle Code section 23104 provides for an increased penalty whenever the reckless driving of a vehicle proximately causes bodily injury to a person.

The Legislature has determined what is the punishment for a violation of Vehicle Code sections 23103 and 23104. In fact, effective July 1, 1982, the punishment for these two sections is to change, but is to still remain as misdemeanors. To effectively punish those who operate a vehicle in the manner defendant did, it must be left in the hands of the Legislature, and for them to substantially increase the punishment.

■ A car can be operated in such a manner as to constitute a deadly weapon. (*People* v. *Claborn* (1964) 224 Cal.App.2d 38 [36 Cal.Rptr. 132].) But the evidence must satisfy the general intent required within the statute.

In the present case it did not. The motion for an acquittal under Penal Code section 1118.1 should have been granted or in the alternative that the evidence was insufficient to support the charge.

## III

Did the trial court fail to properly instruct the jury pursuant to CAL-JIC No. 9.00?

No discussion is necessary in regard to the court modifying the assault instruction (CALJIC No. 9.00) since this court is reversing the conviction as to count III, assault with a deadly weapon in the use of an automobile.

## IV

■ Did the trial court fail to instruct the jury concerning the defense of self-defense?

An examination of the record fails to reveal that defense counsel requested self-defense instructions, or that they were requested and denied by the trial court.

However, it is settled that in criminal cases, even when not requested, the court must instruct on the general principles of law relevant to the issues raised by the evidence. (*People* v. *Hood* (1969) 1 Cal.3d 444 [82 Cal.Rptr. 618, 462 P.2d 370].)

It is the court's duty to ensure the jury is adequately instructed on the law governing all elements of the case submitted to it to the extent necessary for a proper determination, in conformity with the applicable law. (*People* v. *Sanchez* (1950) 35 Cal.2d 522 [219 P.2d 9]; *People* v. *Iverson* (1972) 26 Cal.App.3d 598 [102 Cal.Rptr. 913].)

So, with or without assistance from counsel, a judicial duty is still one that requires percipience; however, while it does not require omniscience, the warning flags are up as the proliferation of the *sua sponte*

instructions continues unabated. (Witkin, Cal. Crim. Procedure (1978 Supp.) Trial, § 471, pp. 776-777.)

Testimony of the defendant indicated Miss Young produced the gun and requested he purchase the gun. His own testimony revealed she made no signs of an intent to use the gun. A struggle did not ensue until such time as defendant grabbed the gun and tried to take it away from Miss Young.

Under that set of facts, the trial court was not compelled to find *sua sponte* that the evidence was substantial enough to require a self-defense instruction. The judgment on the simple assault must stand.

## CONCLUSION

The judgment is reversed as to count III, assault with a deadly weapon, Penal Code section 245, subdivision (a).

The judgment is affirmed as to the necessarily included offense within count II, simple assault.

The judgment is affirmed as to count IV, felony hit and run, Vehicle Code section 20001.

The matter is remanded back to the trial court for sentencing in conformity with this opinion as to count IV, felony hit and run, and the necessarily included offense, simple assault.

Spencer, P. J., and Dalsimer, J., concurred.