Filed 2/28/14  P. v. Johnson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE, | C070275 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F02240) |
| v. | |
| DONNELL DOMNICK JOHNSON, | |
| Defendant and Appellant. | |

Defendant Donnell Domnick Johnson was charged with corporal injury to a co-parent (Pen. Code, § 273.5, subd. (a))[1] and assault with a deadly weapon (§ 245, subd. (a)(1)), along with one strike, three prior serious felony and four prior prison term allegations (§§ 1170.12, 667.5, subd. (b), 667, subds. (a), (b)-(i)).  Following a jury trial, defendant was acquitted of the corporal injury charge and convicted of assault with a deadly weapon.  The trial court sustained the strike and serious felony allegations, struck the prior prison term allegations, and sentenced defendant to 19 years in state prison.

---

[1]  Undesignated statutory references are to the Penal Code.

1

On appeal, defendant contends the trial court erred in failing to give a requested pinpoint instruction on false imprisonment, and should have instructed on corpus delicti and viewing admissions with caution. He also contends that there is insufficient evidence to sustain his conviction for assault with a deadly weapon. We affirm.

BACKGROUND

Toni Ousley-Harps knew defendant for 23 years and had a daughter with him. In March 2011 she was estranged from her husband and rekindling a romance with defendant.

On March 26, 2011, Ousley-Harps and defendant went to the Adam and Eve adult store to pick up a few items. Defendant got a text from his ex-wife; Ousley-Harps heard defendant say his ex-wife's name while he was looking at a book of sex positions. She looked at defendant's phone and determined the text contained a sexually suggestive song. This angered Ousley-Harps, who threw the cell phone at defendant and left the shop, waiting for him in her car. Defendant joined her a moment later.

According to Ousley-Harps's testimony, the two started an argument that continued when they got into the car. Ousley-Harps was so angry she refused to listen to defendant. When they argued defendant typically tried to remove himself from the situation. As Ousley-Harps drove, defendant repeatedly asked to be let out of the car.

Ousley-Harps drove westbound on Interstate 80, entering at the Greenback on-ramp as defendant kept asking to be let out of the car. As the argument continued, Ousley-Harps drove 70 miles per hour in the number four lane. She had no problems controlling her car or staying in the lane.

According to Ousley-Harps, defendant hit his hands on the dashboard as he demanded to be let out as the car traveled on Interstate 80. After repeatedly asking to be let out of the car, defendant reached over and pulled on the steering wheel, making contact with Ousley-Harps's face. Ousley-Harps then "pulled" on the steering wheel, losing control of the car and crashing it.

2

Ousley-Harps's car struck a light pole in the freeway's emergency lane, causing the air bags to deploy.  Defendant and Ousley-Harps were both able to get out of the car; Ousley-Harps sustained minor cuts and a cracked rib.  Another motorist called for emergency personnel who arrived soon thereafter.

California Highway Patrol (CHP) Officer Michael Macias and his partner arrived at the scene of the accident at around 9:00 p.m.  Ousley-Harps's heavily damaged car was on the shoulder and dirt embankment of Interstate 80, west of Greenback Lane.  A 25-foot light pole was knocked over, blocking the number five lane and partially blocking lane number four.  Ousley-Harps was yelling and appeared angry, while defendant argued aggressively with her.  As the officers separated the couple, Officer Macias heard Ousley-Harps yell in defendant's direction:  "You tried to kill me.  You grabbed the steering wheel."

Ousley-Harps was taken to U.C. Davis Medical Center.  Her husband was initially in the emergency room with her, but left at her request.  After her husband left, Ousley-Harps told Officer Macias that she and defendant went to the Adam and Eve store to get some toys and books, and got into an argument before she drove onto the freeway.  Defendant asked her to get out of the car at some moment during the argument.  At some point she was hit on the right side of her jaw.  The next thing she knew, defendant yelled:  "You are going with me," and grabbed the steering wheel, probably steering it to the right.  Officer Macias noticed some redness and swelling where Ousley-Harps indicated she had been hit.

In April 2011 Ousley-Harps wrote a notarized three-page letter giving her version of the incident.  She wrote that defendant:  "struck me under the right side of my chin and grabbed the steering wheel causing me to lose control."

Ousley-Harps testified that defendant did not intentionally strike her.  She did not recall defendant making any statement other than "Let me the fuck out of the car."  She lied about the incident to the CHP officer because she did not want to cause more

3

problems with her estranged husband, who was within earshot at the hospital. The notarized letter was written when she was still mad at defendant.

Ousley-Harps was also called as a defense witness. Her husband was there for most of her interview at the hospital; she did not want him there after noticing he was angry and upset. She asked him to leave because she would be traveling home with him and did not want him to hear the details of the incident. She did not feel comfortable telling the truth even after he left the room, as she believed that whatever she said to Officer Macias would get back to her husband.

## DISCUSSION

### I

Defendant contends the trial court committed prejudicial error in denying his request for a pinpoint instruction on false imprisonment. We disagree.

Defendant asked the trial court give the following pinpoint instruction on misdemeanor false imprisonment, a modified version of CALCRIM No. 1242:

"A person is guilty of this crime if: [¶] 1. A person intentionally . . . confined . . . a person; [¶] AND [¶] 2. A person's act made that person stay or go somewhere against that person's will. [¶] An act is done *against a person's will* if that person does not consent to the act. In order to *consent*, a person must act freely and voluntarily and know the nature of the act. [¶] False imprisonment does not require that the person restrained or detained be confined in jail or prison."

In support of the instruction, defense counsel argued he wanted to explain to the jury that defendant "was confined against his will at that time and had a lawful right to use some force in order to be able to remove himself from the situation." The trial court denied the request, stating: "You can certainly argue that in your argument, in any event. But there is no evidence, whatsoever, that he was forced into that car from the Adam & Eve store."

4

A defendant has a right, upon request, to an instruction that pinpoints the theory of the defense. (*People v. Earp* (1999) 20 Cal.4th 826, 886.) A proper pinpoint instruction does not pinpoint specific evidence, but the theory of the defendant's case. (*People v. Wright* (1988) 45 Cal.3d 1126, 1137.) "The pinpoint instruction highlights the burden of persuasion applicable to a decisive element of the case. It does not cast doubt upon the credibility of the prosecution evidence but stresses the burden which the prosecution bears in the jury's evaluation of the evidence on the point. ' "It is not for the trial judge to say that certain testimony should raise a reasonable doubt in the minds of the jurors as to an essential element of the People's case." ' " (*People v. Adrian* (1982) 135 Cal.App.3d 335, 341.)

"[A] trial court need not give a pinpoint instruction if it is argumentative [citation], merely duplicates other instructions [citation], or is not supported by substantial evidence [citation]." (*People v. Bolden* (2002) 29 Cal.4th 515, 558.) "It is of course virtually axiomatic that a court may give only such instructions as are correct statements of the law. [Citation.] Accordingly, a court may refuse an instruction that is incorrect. [Citation.] It may also refuse an instruction that is confusing. [Citation.]" (*People v. Gordon* (1990) 50 Cal.3d 1223, 1275, disapproved on other grounds in *People v. Tully* (2012) 54 Cal.4th 952, 1031.)

There was no charge of false imprisonment and thus CALCRIM No. 1242 was not applicable. Nonetheless, defendant asserts he was unlawfully imprisoned when Ousley-Harps refused to let him leave the car. According to defendant, the requested pinpoint instruction "was . . . a clear indication that he sought to rely upon the defense of lawful resistance." Claiming the force he used to resist the offense was reasonable, defendant contends the trial court was obligated to give the pinpoint instruction.

Lawful resistance to the commission of a public offense may be made by a party about to be injured in order to prevent an offense against his person. (§§ 692, 693.) A person's right to resist a crime is not a license to respond with unrestricted force. Instead,

5

" 'any right of self-defense is limited to the use of such force as is reasonable under the circumstances.  [Citation.]'  [Citations.]"  (*People v. Minifie* (1996) 13 Cal.4th 1055, 1065, 1064.)

Defendant did not request an instruction on self-defense, which would have informed the jury that any use of force would have to be reasonable under the circumstances.  Assuming, as defendant asserts, that trial counsel was "inartfully" trying to set forth a defense of necessity or lawful resistance, neither the law nor the evidence supports either defense.

"To justify an instruction on the defense of necessity, there must be evidence sufficient to establish that defendant violated the law (1) to prevent a significant evil, (2) with no adequate alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief in the necessity, (5) with such belief being objectively reasonable, and (6) under circumstances in which he did not substantially contribute to the emergency.  [Citations.]"  (*People v. Pepper* (1996) 41 Cal.App.4th 1029, 1035, fn. omitted.)

The "evil" defendant allegedly tried to prevent here was being in the car with his paramour while she was angry.  Defendant entered the car voluntarily and his victim was driving defendant to his intended destination.  The only reason for his wanting to leave was that he preferred to withdraw from arguments with Ousley-Harps.  Balanced against this harm was the significant danger of defendant's action -- grabbing the steering wheel of a car traveling on the freeway at 70 miles per hour.  The resulting crash not only injured defendant's victim, but created a significant traffic hazard and potential danger to other motorists -- a 25-foot long light pole obstructing two lanes of a freeway at night.  The balance of harm to be avoided and harm incurred from defendant's action would have justified rejecting an instruction on necessity or on self-defense.  Since the requested instruction was premised on an inapplicable defense, it was properly rejected.

We also agree with the reason given by the trial court for rejecting the instruction. Relying on *People v. Camden* (1976) 16 Cal.3d 808 (*Camden*), defendant claims it was irrelevant that he voluntarily entered the car he later sought to leave. In *Camden* the victim accepted a ride offered by defendant, whom she had recently met in passing. (*Id.* at p. 811.) Defendant drove a short distance in the victim's intended direction, but then veered off and forcibly prevented her from leaving after she asked to be dropped off or taken home. (*Ibid.*) She did not try to escape when he drove on the freeway, but was able to jump out of the car 30 to 45 minutes later. (*Id.* at pp. 811-812.)

In rejecting the contention that defendant was guilty of false imprisonment rather than kidnapping because his victim voluntarily entered the car (*Camden, supra*, 16 Cal.3d at p. 812), the Supreme Court noted: "An accused forceful enough to restrain his victim inside the car could, under the contention urged by defendant, only be convicted of false imprisonment regardless of the amount of force used or how far asportation continued. On the other hand the careless or relatively passive accused who allowed his victim momentarily to leave the vehicle before being forced to return during the course of asportation would be guilty of kidnaping," a result it termed an "absurdity." (*Id.* at p. 815, fn. 3.)

Defendant argues this shows that "using force to restrain a person who tries to escape from a car in which [they] voluntarily entered is kidnap [and] simply restraining them in the car (i.e., not stopping) is false imprisonment." This contention ignores another passage in the *Camden* opinion: "Evidence that asportation was initiated voluntarily remains relevant to a determination by the trier of fact on the issue of the alleged victim's consent to continued asportation. Although not involved in the instant case, evidence of a prior close relationship between the parties, such as marriage or other romantic or family ties, is similarly relevant although likewise not dispositive where there is substantial evidence that asportation was induced or continued by means of threat or force." (*Camden*, *supra,* 16 Cal.3d at p. 815, fn. 4.)

7

We do not need to define the precise contours of the crime of false imprisonment to reject defendant's argument. Here, defendant entered the car willingly, he had a longstanding relationship and a romantic involvement with the driver who was taking him to his intended destination, and the driver declined to stop the car on a freeway and let defendant out when defendant simply wanted to avoid an argument. There is no evidence of false imprisonment. Since there was not substantial evidence to support the crime, the trial court did not have to give the requested pinpoint instruction.

II

Defendant contends the trial court committed reversible error by failing to instruct sua sponte on the corpus delicti rule, CALCRIM No. 359. In the alternative, he asserts the trial court should have instructed the jury to view defendant's extrajudicial statement with caution. We find the trial court erred, but the error was harmless.

A.

In a criminal trial, the prosecution must prove the corpus delicti of the crime -- that is, the fact of injury, loss, or harm, and the existence of a criminal agency as its cause -- without relying exclusively upon the defendant's extrajudicial statements, confessions, or admissions. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168-1169 (*Alvarez*).) This requirement of independent proof precludes conviction based solely on a defendant's out-of-court statements. (*Id.* at p. 1178.) It "requires corroboration of the defendant's extrajudicial utterances insofar as they indicate a crime was committed, and forces the People to supply, as part of their burden of proof in every criminal prosecution, some evidence of the corpus delicti aside from, or in addition to, such statements." (*Ibid.*, italics omitted.) The corpus delicti of a crime may be proven by circumstantial evidence and need not amount to proof beyond a reasonable doubt. (*Id.* at p. 1171.) Once the corpus delicti has been established, the defendant's statements may be considered for their full value and used to strengthen the prosecution's case. (*Id.* at pp. 1171, 1181.)

8

The trial court has a duty to instruct sua sponte on the corpus delicti rule where the People rely in part on defendant's extrajudicial statement. (*Alvarez, supra*, 27 Cal.4th at pp. 1170, 1178, 1180, 1181.) However, "[e]rror in omitting a corpus delicti instruction is considered harmless, and thus no basis for reversal, if there appears no reasonable probability the jury would have reached a result more favorable to the defendant had the instruction been given. [Citations.]" (*Id*. at p. 1181.) As long as there is " 'a slight or prima facie showing' " permitting an inference of injury, loss, or harm from a criminal agency, the jury may consider the defendant's statements to strengthen the case on all issues. (*Ibid*.) "If, as a matter of law, this 'slight or prima facie' showing was made, a rational jury, properly instructed, could not have found otherwise, and the omission of an independent-proof instruction is necessarily harmless." (*Ibid*.)

Section 245 defines the crime of assault with a deadly weapon to require "an assault upon the person of another" and the use of either "a deadly weapon or instrument other than a firearm" or "any means of force likely to produce great bodily injury." (§ 245, subd. (a)(1); *People v. McDaniel* (2008) 159 Cal.App.4th 736, 747-748.) A vehicle can be used as a "deadly weapon" within the meaning of this provision. (*People v. Russell* (2005) 129 Cal.App.4th 776, 782.) The crime of "assault does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*People v. Williams* (2001) 26 Cal.4th 779, 790.)

During an argument while Ousley-Harps was driving 70 miles per hour on the freeway at night, defendant grabbed the steering wheel and probably steered it to the right. The highly dangerous nature of defendant's act, coupled with evidence of motive, a romantic evening soured into a highly contentious argument, supports an inference that defendant intended to crash the car by grabbing the steering wheel. This establishes a

9

prima facie case of assault with a deadly weapon, rendering harmless the error in failing to instruct on the corpus delicti rule.

B.

As relevant here, CALCRIM No. 358 provides: "You have heard evidence that the defendant made [an] oral . . . [statement] . . . before the trial . . . . You must decide whether the defendant made any [such statement], in whole or in part. If you decide that the defendant made such [a statement], consider the [statement], along with all the other evidence, in reaching your verdict. It is up to you to decide how much importance to give to the [statement]. [¶] . . . Consider with caution any statement made by [the] defendant tending to show [his] guilt unless the statement was written or otherwise recorded . . . ."

This instruction must be given sua sponte when warranted by the evidence. (*People v. Carpenter* (1997) 15 Cal.4th 312, 392 (*Carpenter*).) "The rationale behind the cautionary instruction suggests it applies broadly. 'The purpose of the cautionary instruction is to assist the jury in determining if the statement was in fact made.' [Citation.] This purpose would apply to any oral statement of the defendant, whether made before, during, or after the crime." (*Id*. at pp. 392-393.) Since the People relied in part on defendant's statement to Ousley-Harps "You are going with me," as he grabbed the steering wheel, the trial court was required to give the instruction.

Omission of the cautionary instruction is reviewable under "the normal standard of review for state law error: whether it is reasonably probable the jury would have reached a result more favorable to defendant had the instruction been given. [Citations.]" (*Carpenter, supra*, 15 Cal.4th at p. 393.)

The admission consists of a single statement from defendant, as related by Ousley-Harps in her interview with Officer Macias. At trial, Ousley-Harps testified that defendant did not make the statement, and she could not recall telling the officer defendant had made such a statement. Although it was not instructed to view defendant's

10

statement with caution, the jury was nonetheless instructed to determine whether the statement was made in light of Ousley-Harps's conflicting statements. The jury was instructed with CALCRIM No. 302 that "[i]f you determine that there is a conflict in the evidence, you must decide what evidence to believe." In addition, the jury was instructed with CALCRIM No. 226 that "[y]ou may believe all or part or none of the witnesses' testimony." CALCRIM No. 226 also instructed the jury to consider "[d]id the witness make a statement in the past that is consistent or inconsistent with his or her testimony" when evaluating a witness's testimony. Instructing the jury on evaluating a witness's credibility mitigates the prejudice from failing to give the cautionary instruction. (*Carpenter, supra*, 15 Cal.4th at p. 393.)

Defendant's statement was evidence of the mental element of assault with a deadly weapon, " 'the general intent to willfully commit a battery, an act which has the direct, natural and probable consequences, if successfully completed, of causing injury to another. [Citations.]' " (*People v. Lee* (1994) 28 Cal.App.4th 1724, 1734.) This was far from the only evidence of defendant possessing the necessary mental element for assault with a deadly weapon. The act of pulling on a steering wheel of a car traveling on a freeway at 70 miles per hour is itself powerful circumstantial evidence of defendant's intent to willfully commit a battery, and was coupled with the uncontradicted evidence of motive, defendant's argument with his paramour.

In light of the other instructions, the nature of defendant's statement, and the other evidence of his guilt, it is not reasonably probable that giving CALCRIM No. 358 would have lead to a different result.

III

Defendant's final contention is the evidence was insufficient to sustain his conviction for assault with a deadly weapon.

"To determine the sufficiency of the evidence to support a conviction, an appellate court reviews the entire record in the light most favorable to the prosecution to determine

11

whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.]" (*People v. Kipp* (2001) 26 Cal.4th 1100, 1128.)

A conviction for violation of section 245, subdivision (a)(1) requires proof that the defendant: (1) willfully committed an unlawful act which by its nature would probably and directly result in the application of physical force on another person; (2) he was aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of this act that physical force would be applied to another person; (3) he had the present ability to apply physical force to the person of another; (4) he committed the assault by means of force likely to produce great bodily injury or used a deadly weapon in the assault. (CALCRIM No. 875.)

Defendant relies on *People v. Jones* (1981) 123 Cal.App.3d 83 (*Jones*) and *People v. Cotton* (1980) 113 Cal.App.3d 294 (*Cotton*). In those cases, the defendants were being pursued by police and, during the chases, struck vehicles and injured victims. (*Jones, supra*, 123 Cal.App.3d at p. 87; *Cotton, supra*, 113 Cal.App.3d at pp. 296-298.) In *Jones*, the assault with a deadly weapon conviction was reversed because the Court of Appeal concluded there was insufficient evidence to show Jones intended to commit a battery. (*Jones, supra*, 123 Cal.App.3d at pp. 96-97.) In *Cotton,* the trial court erred in concluding that reckless driving in violation of Vehicle Code section 23104 "per se generated a transferable intent to commit a battery via automobile in violation of Penal Code section 245, subdivision (a)." (*Cotton, supra*, 113 Cal.App.3d at p. 307.) Relying on these cases, defendant argues the evidence shows no more than recklessness, and the evidence does not establish that he had knowledge of the "facts sufficient to establish that momentarily grabbing the wheel would probably and directly result in the application of physical force against another."

Neither *Jones* nor *Cotton* is applicable to this case. Here, defendant (the passenger) grabbed the steering wheel as the car was going 70 miles per hour on the

12

freeway, at night, in moderate traffic.  The risk of harm to the driver and the occupants of the other vehicles on the roadway was not the consequence of evading an officer, but the intended result of defendant's action.  Defendant's action was not merely reckless, it was an intent to commit an act whose natural and probable consequence was a car accident -- the application of force to another person as a result of defendant's act of grabbing the steering wheel.  Since the remaining elements of assault with a deadly weapon are uncontested, we reject defendant's contention.  Moreover both *Jones* and *Cotton* predate the Supreme Court's decision in *People v. Williams* (2001) 26 Cal.4th 779, 790, which altered the law of assault reflected in CALCRIM No. 875.

DISPOSITION

The judgment is affirmed.


      BLEASE      , Acting P. J.


We concur:


      MAURO      , J.


      MURRAY      , J.