[No. B231434. Second Dist., Div. Six. Nov. 6, 2012.]

THE PEOPLE, Plaintiff and Respondent, v.
AREN AZNAVOLEH, Defendant and Appellant.

**COUNSEL**

Julie Schumer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PERREN, J.**—Assault with a deadly weapon requires proof of an intentional act committed with knowledge of facts that would lead a reasonable person to realize that physical force would be applied to another as a direct and probable consequence of that act. (*People v. Williams* (2001) 26 Cal.4th 779, 782 [111 Cal.Rptr.2d 114, 29 P.3d 197] (*Williams*).) There is no requirement that the actor intend or be subjectively aware of the prospect of such a consequence. (*Ibid.*) The primary issue in this case is whether a driver who deliberately races through a red light at a busy intersection and collides with another vehicle, causing injury to another, can be convicted of assault with a deadly weapon. The answer is yes. Although the trial court erred by instructing the jury that defendant could not be convicted of assault unless he actually knew that his reckless driving would cause injury to another, the instruction inured to defendant's benefit and the error was harmless.

Aren Aznavoleh appeals the judgment entered after a jury convicted him on two counts each of assault with a deadly weapon (Pen. Code,[1] § 245, subd. (a)(1)), and reckless driving causing injury (Veh. Code, § 23105, subd. (a)). The jury also found true allegations that appellant personally inflicted great bodily injury in committing both assaults (§ 12022.7, subd. (a)). The trial court sentenced him to seven years in state prison. Appellant contends the evidence is insufficient to support his convictions for assault with a deadly weapon. He also claims evidentiary error and ineffective assistance of counsel. We affirm.

### STATEMENT OF FACTS

In the early evening of January 9, 2009, Timothy Worman was standing in front of his residence at the corner of Glenoaks Boulevard and Estelle Avenue in Glendale when he heard two cars revving their engines and accelerating eastbound on Glenoaks. Worman looked up and saw a sports car traveling through the intersection at a speed of approximately 60 miles per hour, followed by a red Nissan Quest minivan driving at the same speed about three car lengths behind. It appeared to Worman that the cars were racing or

---

[1] All undesignated statutory references are to the Penal Code.

chasing each other.[2] Shortly after the cars passed, Worman heard what sounded like a loud explosion. He looked up the street and saw that the minivan had collided with another vehicle a block away at the intersection of Glenoaks and Concord Street.

Appellant was the driver of the minivan, and Rafick Daroose was driving the vehicle he struck. Areknaz Kevorkian was in the vehicle behind Daroose, second in line in the left turn signal lane from Glenoaks onto Concord. Kevorkian saw Daroose drive into the intersection after the left turn signal changed from red to green. As Daroose was turning left onto Concord, he was struck by appellant's minivan. It appeared to Kevorkian that the minivan was driving at a high rate of speed and that the driver made no attempt to slow down prior to the collision. Kevorkian did not hear a honking horn or screeching brakes, nor did she see the minivan driver flash his lights to indicate that he was about to enter the intersection.

After the collision occurred, Daroose lost control of his vehicle and crashed into a palm tree. Appellant's minivan spun out and ended up on the center median. Tire friction or skid marks could be seen in the middle of the intersection at the point of impact. No skid marks were visible prior to that point.

Daroose suffered an intracranial bleed and other trauma to his brain as a result of the collision. He is now unable to speak, eat, or swallow. He also suffered neurological damage to his right side and is unable to move the majority of his body. Daroose's spleen and a portion of his bowel also had to be removed and his right eye is nonfunctional. He is permanently confined to bed with little or no hope of recovery. Daroose cannot communicate with his wife or their young son and does not appear to recognize either of them.

Tadeh Haghvirdi and Haybert Mahmoudi were passengers in appellant's minivan when the accident occurred. Haghvirdi, who was sitting in the backseat, noticed a white car driving in the same direction shortly before the collision. Appellant was driving fast, and both Haghvirdi and Mahmoudi told him two or three times to slow down.[3] As they approached Concord, Haghvirdi saw the traffic signal and screamed, "It's red." Appellant did not

---

[2] In Worman's experience, racing on the street was common. During the four years he had lived there, he saw or heard cars racing at least once a week.

[3] Mahmoudi disputed Haghvirdi's claim that both men told appellant to slow down, although he recalled Haghvirdi doing so. Mahmoudi also testified that he was looking down and did not see Daroose's vehicle prior to the collision. He later testified that he was telling the truth when he told the police he was talking to Haghvirdi and not looking down at his lap when the collision occurred. Mahmoudi, who is appellant's first cousin, did not want to say anything that would get him in trouble.

respond, nor did he honk his horn or make any attempt to slow down. Haghvirdi could see Daroose's vehicle in the intersection before they struck it. As a result of the collision, Haghvirdi suffered a broken arm and underwent two surgeries requiring the insertion of a metal bar and a muscle transplant.

When Mahmoudi was interviewed by the police after the collision, he said appellant was driving up to 80 miles per hour and "maybe" had been racing. Haghvirdi said appellant was only driving 40 to 50 miles per hour and denied that he was racing.

Glendale Police Officer Bryan Duncan interviewed appellant the night of the collision. A recording of the interview was played for the jury and a transcript of the recording was provided. Appellant said he was stopped at a traffic light in the left lane at the intersection of Glenoaks and Graynold Avenue when he saw a white BMW one lane away in the right-hand lane. Appellant began driving when the light turned green, and the BMW started driving faster than him as if the driver wanted to race. The BMW passed appellant going about 65 miles per hour and moved into the middle lane. Appellant's speed reached 45 to 50 miles per hour. When he pressed his brake pedal, it "didn't came [sic] down." He could see that the light was turning green for the vehicles turning left onto Concord. He tried to drive to the right to avoid Daroose's vehicle, honked his horn, turned on his head-lights, and pressed the brake. He heard his rear tires skid, but his minivan did not stop. Appellant acknowledged that if someone had been standing on Glenoaks, he or she would have thought that appellant and the driver of the BMW were racing. He denied that he was doing so.

Officer Duncan testified that speed racing on Glenoaks was "a big prob-lem." There had been multiple crashes on the street as a result of racing. The posted speed limit is 40, and the officer had clocked cars driving on the street as fast as 102 miles per hour. The most common way for a race to start "is to pull up at a stop light that's already red; rev your engines; put it into gear; when the light turns green, that's your time to go." Officer Larry Ballesteros, an expert in accident reconstruction, testified that appellant was travelling 61 miles per hour when the collision occurred. The officer also inspected the minivan's braking system and determined "[t]hat there was nothing wrong with the braking system that would consider [sic] somebody saying that their brakes completely failed."

Less than two months prior to the collision, appellant was issued a speeding ticket while driving his minivan on Glenoaks Boulevard. The officer who issued the ticket testified that appellant was driving 59 miles per hour while the rest of the traffic was traveling the posted speed limit of 40 miles

per hour. When issuing the citation, the officer determined that appellant knew the speed limit was 40 miles per hour.

Appellant testified in his own behalf. While stopped at a traffic light on Glenoaks that night, appellant noticed a white car that was also stopped. Both cars started at the same time when the light turned green, but the white car drove much faster. When the collision occurred, he was driving between 40 and 50 miles per hour. He tried braking six car lengths before the intersection when he saw Daroose's car start turning left. Appellant tried to swerve, honked his horn, and flashed his headlights in an effort to avoid the collision.

## DISCUSSION

### *Sufficiency of the Evidence—Assault with a Deadly Weapon*

Appellant contends the evidence is insufficient to support his convictions for committing assault with a deadly weapon against Daroose and Haghvirdi. We conclude otherwise. We also conclude that although the court misinstructed the jury on an element of the crime, the error was harmless.

In deciding claims of insufficient evidence, we review the entire record in the light most favorable to the prosecution "to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Silva* (2001) 25 Cal.4th 345, 368 [106 Cal.Rptr.2d 93, 21 P.3d 769].) We do not resolve credibility issues or evidentiary conflicts. Instead, we presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. (*People v. Boyer* (2006) 38 Cal.4th 412, 480 [42 Cal.Rptr.3d 677, 133 P.3d 581].) "A reversal for insufficient evidence 'is unwarranted unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357 [75 Cal.Rptr.3d 289, 181 P.3d 105], quoting *People v. Bolin* (1998) 18 Cal.4th 297, 331 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

■ "[A]ssault requires only a general criminal intent and not a specific intent to cause injury. [Citation.]" (*Williams, supra,* 26 Cal.4th at p. 782.) In order to convict on assault, the jury need only find that the defendant (1) willfully committed an act which by its nature would probably and directly result in the application of physical force against another and (2) was aware of facts that would lead a reasonable person to realize this direct and probable consequence of his or her act. (*Ibid.*) The crime does not require any intent to cause an application of physical force, or a substantial certainty that an

application of force will result. (*People v. Colantuono* (1994) 7 Cal.4th 206, 214–220 [26 Cal.Rptr.2d 908, 865 P.2d 704].)

The jury was instructed pursuant to CALJIC No. 9.00 as follows: "In order to prove an assault, each of the following elements must be proved: [¶] 1. A person willfully [and unlawfully] committed an act which by its nature would probably and directly result in the application of physical force on another person; [¶] 2. The person committing the act was aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of this act that physical force would be applied to another person; and [¶] 3. At the time the act was committed, the person committing the act had the present ability to apply physical force to the person of another. [¶] The word 'willfully' means that the person committing the act did so intentionally. However, an assault does not require an intent to cause injury to another person, or an actual awareness of the risk that injury might occur to another person. [¶] To constitute an assault, it is not necessary that any actual injury be inflicted. However, if an injury is inflicted it may be considered in connection with other evidence in determining whether an assault was committed [and, if so, the nature of the assault]."

After deliberations had begun, the trial court further instructed the jury that "[a]s to [the assault counts], the People have to prove the defendant intended to drive through the red light knowing his action would result in injury to another." The trial court believed this special instruction was necessary based on a perceived deficiency in CALJIC No. 9.00, as discussed in *Williams*. In emphasizing that a defendant cannot be found guilty of assault without actual knowledge of facts sufficient to establish that his or her act by its nature will probably and directly result in the application of physical force against another, the *Williams* court concluded that the version of CALJIC No. 9.00 in effect at the time was ambiguous on this point but deemed the potential error harmless. The court reasoned that "any instructional error is largely technical and is unlikely to affect the outcome of most assault cases, because a defendant's knowledge of the relevant factual circumstances is rarely in dispute. Indeed, this case corroborates this observation." (*Williams, supra*, 26 Cal.4th at p. 790.)

The trial court in this case believed that "the instruction given in *Williams*, CALJIC 9.00, is the exact same instruction that I gave" and was "concerned that this jury might have been misled by my instructions to the extent that they may be thinking or they may be finding that the act of driving recklessly, that is speeding, or assuming every inference in favor of the People's evidence, racing, that the defendant could be convicted of this crime based on the recklessness." The court also stated its belief that "assault requires an intent to commit a battery."

The trial court's factual and legal conclusions were incorrect. The version of CALJIC No. 9.00 that was given was not identical to the instruction at issue in *Williams*. After that case was decided, the instruction was amended to conform with *Williams* by requiring a finding that "[t]he person committing the act [alleged to be an assault] was aware of facts that would lead a reasonable person to realize that as a direct, natural and probable result of this act that physical force would be applied to another person . . . ." (CALJIC No. 9.00 (2002 rev.) (6th ed. 1996); *People v. Wright* (2002) 100 Cal.App.4th 703, 711, fn. 6 [123 Cal.Rptr.2d 494] (*Wright*).) The jury was so instructed here. Moreover, *Williams* made clear that assault does *not* require intent to commit a battery. (*Williams, supra,* 26 Cal.4th at p. 788, fn. 3 ["[A] defendant who honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally and probably result in a battery."].)

The court's special instruction, which required the People to prove that appellant "intended to drive through the red light knowing his action would result in injury to another," was thus an incorrect statement of the law. The instruction also directly conflicts with CALJIC No. 9.00's statement that "an assault does not require an intent to cause injury to another person, or an actual awareness of the risk that injury might occur to another person." The court's error does not, however, provide any basis for us to disturb the verdict against appellant. Indeed, if the instruction had any effect at all, it *benefitted* appellant by increasing the prosecution's burden of proof.

Appellant's claim of insufficient evidence is based on the premise that the conduct upon which his assault convictions are based, i.e., deliberately racing through a red light at a busy intersection, amounts to mere recklessness. He purports to distinguish this case from others in which the evidence was deemed sufficient to support a finding that the defendant used a vehicle to commit assault with a deadly weapon. (See *People v. Golde* (2008) 163 Cal.App.4th 101, 109 [77 Cal.Rptr.3d 120] [defendant accelerated vehicle toward victim and pursued her as she tried to run away]; *People v. Russell* (2005) 129 Cal.App.4th 776, 779 [28 Cal.Rptr.3d 862] [defendant pushed victim into path of oncoming car]; *Wright, supra,* 100 Cal.App.4th at p. 705 ["defendant drove his pickup truck close to persons with whom he had contentious relations"]; *People v. Claborn* (1964) 224 Cal.App.2d 38, 41 [36 Cal.Rptr. 132] [defendant aimed vehicle at police officer and collided with him].)

■ Appellant's assertion that he is merely guilty of reckless behavior is unavailing. His conviction on two counts of reckless driving causing injury is based on evidence that he drove his vehicle with an intentional or conscious

disregard for the safety of others. (Veh. Code, § 23105; CALJIC No. 16.840.) As the Supreme Court has explained, the difference between assault and mere recklessness is that the former "requires actual knowledge of the facts sufficient to establish that the defendant's act by its nature will probably and directly result in injury to another." (*Williams, supra,* 26 Cal.4th at p. 782.) In other words, a defendant "may not be convicted [of assault] based on facts he did not know but should have known. He, however, need not be subjectively aware of the risk that a battery might occur." (*Id.* at p. 788, fn. omitted.)[4] Although one court has criticized this holding as "adopt[ing] a negligence standard" of criminal liability for assault, it also recognized that the lower courts are bound to follow that holding. (*Wright, supra,* 100 Cal.App.4th at pp. 705, 707; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937].) The same court further recognized the holding essentially means that "any operation of a vehicle by a person knowing facts that would lead a reasonable person to realize a battery will probably and directly result may be charged as an assault with a deadly weapon." (*Wright, supra,* at p. 706.)

█ Construed in the light most favorable to the judgment, the evidence in this case shows that appellant deliberately ran a red light while racing another vehicle on a busy city street. His passengers repeatedly told him to slow down, and one of them screamed, "[i]t's red." Appellant acknowledged he saw Daroose's vehicle start turning left as appellant was approaching the intersection. Moreover, appellant made no effort to stop, slow down, or otherwise avoid a collision with Daroose's vehicle. In reviewing appellant's claim of insufficient evidence, the test is whether an objectively reasonable person with knowledge of these facts would appreciate that an injurious collision, i.e., a battery, would directly and probably result from his actions. Based on the evidence, the jury could make such a finding.[5]

*People v. Cotton* (1980) 113 Cal.App.3d 294 [169 Cal.Rptr. 814] (*Cotton*), and *People v. Jones* (1981) 123 Cal.App.3d 83 [176 Cal.Rptr. 398], do not compel a different result. The defendants in those cases were convicted of

---

[4] In clarifying its earlier statement that reckless conduct cannot constitute an assault, the court in *Williams* explained that "recklessness" is used in this context "in its historical sense as a synonym for criminal negligence, rather than its more modern conception as a subjective appreciation of the risk of harm to another. [Citation.]" (*Williams, supra,* 26 Cal.4th at p. 788, fn. 4, citing *People v. Colantuono, supra,* 7 Cal.4th at p. 219.)

[5] In challenging the sufficiency of the evidence to support his assault convictions, appellant does not urge us to distinguish between victim Daroose, who was driving the other vehicle involved in the collision, and victim Haghvirdi, who was a passenger in appellant's vehicle. Moreover, we cannot conceive of any legal basis for making such a distinction. The issue is whether appellant had actual knowledge of facts sufficient to establish that his act of racing through the red light would probably and directly result in injury to another. (*Williams, supra,* 26 Cal.4th at p. 782.) In light of the evidence, the jury reasonably found that injury to both victims was objectively foreseeable.

committing assault with a deadly weapon after colliding with other vehicles during high-speed police chases. In both cases, the court concluded the evidence was insufficient to support the convictions because there was no evidence from which the jury could have inferred the defendants deliberately drove their vehicles into the cars with which they collided. One of the justices in *Cotton* issued a vigorous dissent. (*Cotton, supra,* at pp. 307–309 (dis. opn. of Hanson, J.).) The majority in *Cotton* reasoned among other things that intent to commit a battery, i.e., attempted battery, is an element of assault with a deadly weapon. (*Id.* at p. 301.) The court in *Jones* essentially followed the majority in *Cotton.* (*Jones, supra,* at pp. 96–97.) Subsequent controlling authority fatally undermines both of these opinions. (*Williams, supra,* 26 Cal.4th at p. 788.) As we have explained, a defendant need not intend to commit a battery, or even be subjectively aware of the risk that a battery might occur. (*Ibid.*) He need only be aware of what he is doing. The foreseeability of the consequences is judged by the objective "reasonable person" standard. (*Ibid.*)

History has vindicated the dissenting justice in *Cotton.* In comparing the case to *People v. Lathus* (1973) 35 Cal.App.3d 466 [110 Cal.Rptr. 921], the justice reasoned: "I see little difference from deliberately shooting a gun into a stalled car as in *Lathus* and the deliberate manner, inherently dangerous to others with a conscious disregard for human life, in which the defendant herein propelled his car (like a bullet) through residential streets in the manner described. Defendant's conduct could have resulted in the wiping out of pedestrians or entire families lawfully crossing intersections on green lights and unquestionably his conduct was so inherently dangerous to others displaying a conscious disregard for human life as to constitute an assault with a deadly weapon as in *Lathus.*" (*Cotton, supra,* 113 Cal.App.3d at pp. 308–309 (dis. opn. of Hanson, J.).) Appellant's similar conduct has demonstrated the wisdom of this analysis. His claim that the evidence is insufficient to support his convictions for assault with a deadly weapon accordingly fails.

### *Evidentiary Objections—Ineffective Assistance*

Appellant asserts the court committed reversible error by admitting evidence that street racing is common on Glenoaks Boulevard. He also assigns as error the court's admission of three photographs depicting Daroose with his family before the accident, and another photograph of Daroose in his current condition. Appellant claims that all of this evidence should have been excluded as both irrelevant and unduly prejudicial under Evidence Code section 352.

Trial counsel did not object to the street racing evidence. Counsel also failed to object to the three photographs that were taken prior to the accident,

although he did object to the postaccident photograph on the ground of undue prejudice. Appellant acknowledges that the claims for which there was no objection are forfeited, yet contends that counsel's failure to object amounts to constitutionally ineffective assistance of counsel.

We review for abuse of discretion a trial court's ruling on the admissibility of evidence under Evidence Code section 352. (*People v. Linkenauger* (1995) 32 Cal.App.4th 1603, 1610 [38 Cal.Rptr.2d 868].) A court's erroneous admission of evidence under Evidence Code section 352 requires reversal only if there is a reasonable probability that the defendant would have obtained a more favorable result absent the error. (*People v. Alcala* (1992) 4 Cal.4th 742, 791 [15 Cal.Rptr.2d 432, 842 P.2d 1192]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) When it is claimed that trial counsel was ineffective in failing to raise an objection under Evidence Code section 352, the standard of prejudice is the same, i.e., the defendant must establish a reasonable probability that he would have achieved a more favorable result if counsel had objected to the evidence. (*Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 104 S.Ct. 2052].)

Appellant's claims fail for a lack of any showing of prejudice. Whether appellant was racing was plainly relevant to the jury's determination whether he intentionally ran the red light. In this regard, the evidence also rebutted appellant's claim that he tried to stop or slow down before he entered the intersection where the collision occurred. The heightened danger inherent in street racing also renders the potential for harm more foreseeable, which is relevant to prove that appellant was guilty of both reckless driving and assault with a deadly weapon. Moreover, evidence that racing is common on the street had a tendency in reason to prove that appellant was in fact racing and not merely speeding. (Evid. Code, § 210.) In light of the independent evidence that appellant was racing, there was no undue prejudice in allowing the jury to also consider evidence indicating that racing is common on the street. This also renders appellant unable to demonstrate a reasonable probability that he would have achieved a more favorable result had the evidence been excluded.

The photographic evidence presents a much closer case for purposes of admissibility under Evidence Code section 352. Although the evidence has some tendency to prove that appellant inflicted great bodily injury on Daroose, it also invokes a strong emotional response that risked inflaming the jury's passion and sympathy. The three photographs of Daroose, taken only three months before the accident, depict him in affectionate poses with his wife and young son. By stark contrast, the closeup photograph taken after the accident shows Daroose lying in a hospital bed in what appears to be a vegetative state. If trial counsel had objected to the preaccident photographs,

the court may well have excluded one or more of them under Evidence Code section 352. That is precisely what the court did when it overruled appellant's Evidence Code section 352 objection to the postaccident photograph admitted as exhibit 21; two other photographs taken from the foot of Daroose's bed and his left side were excluded.

Even if appellant could establish that all of the photographs should have been excluded, however, he fails to show the requisite prejudice. In attempting to make that showing, appellant offers that there was a "dearth of evidence" to support the finding that he possessed the requisite intent to commit assault with a deadly weapon. He also offers that the closeness of the case "is further evidenced by the length of deliberations (in excess of one day) relative to the length of trial." Appellant simply misconstrues the intent necessary to sustain a conviction for assault with a deadly weapon. Given the weight of the evidence, this is not one of those cases in which it can be said that sympathy for the victim may have led the jury to improperly convict the defendant. (*People v. DeSantis* (1992) 2 Cal.4th 1198, 1231 [9 Cal.Rptr.2d 628, 831 P.2d 1210].) Because appellant fails to show a reasonable probability that the result of the proceedings would have been different had the challenged evidence been excluded, his claim of prejudicial error fails.

The judgment is affirmed.

Gilbert, P. J., and Yegan, J., concurred.

Appellant's petition for review by the Supreme Court was denied February 13, 2013, S207071.