Filed 3/28/14  P. v. Lee CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>PAUL A. LEE,<br><br>        Defendant and Appellant. | A138641<br><br>(San Mateo County<br>Super. Ct. No. SC072206A) |

Defendant, while driving his motorcycle, encountered a police officer at a control area set up to protect the area ravaged by the San Bruno gas line explosion and fire. Defendant came to a stop, but when asked for his identification, began to continue on. The officer attempted to stop defendant by grabbing him, and held on as defendant accelerated.  After eight to 12 feet, the officer let go, suffering a minor injury to his toe. A jury convicted defendant of several crimes, including assault with a deadly weapon against a peace officer.  Defendant contends he lacked the requisite intent for that crime, claiming he only intended to leave the scene, not to injure the officer.  As assault is a general intent crime, we conclude substantial evidence supports the conviction.  We also reject defendant's argument that the trial court abused its discretion in excluding proffered expert testimony.

### FACTUAL AND PROCEDURAL BACKGROUND

We recite only the facts relevant to the issues on appeal.  On the evening of September 9, 2010, San Bruno Police Sergeant Kurt Likins was summoned in response to a major gas line explosion.  He was wearing a black shirt and vest; the vest had a sheriff's

badge sewn on, and the sleeves, back and front of the vest were emblazoned in yellow with the word "sheriff." Likins and three other officers were sent to the intersection of Crestmoor and Trenton, where residents had been evacuated. The officers were to keep order, prevent looting, and stand ready should the fire from the explosion come nearer. To this end, the officers stopped all traffic to make sure anyone entering had a legitimate reason to be in the area.

At about 12:15 a.m. the following day, Likins saw defendant approach on a motorcycle, a 2001 Kawasaki—approximately 500 pounds. A female passenger was sitting behind him. Likins flagged defendant down with a flashlight, and defendant stopped. Likins asked where he was coming from, and defendant, whose demeanor was "perfectly calm," said he had come from San Francisco to see the fire. Likins then asked defendant to shut off his bike and provide identification. Defendant started to drive away.

As the motorcycle slowly moved forward, Likins grabbed, with his left hand, the front of defendant's jacket (where a lapel would be) and, with his right hand, grabbed the jacket near the back of defendant's neck. Likins intended to stop defendant by pulling him off the bike. But defendant continued driving, and began to speed up. While Likins was pulling defendant toward him, the officer was bracing himself with his feet, but as the bike moved, he had to take steps in the direction it moved. This went on for eight to 12 feet. The whole time, defendant was accelerating, but Likins was able to remain on his feet. Ultimately, while the bike was "[n]ot that fast," it was "fast enough" that Likins "was being pulled" and he eventually had to let go. Defendant and his female companion continued on.

Likins did not recall having any contact with the bike during the incident, except possibly as he made a final attempt to grab defendant. He planted his left foot, then let go, then felt something hit his foot. At the time, Likins thought it was the rear tire of the bike, but during testimony at trial, he was no longer sure. Likins sought medical treatment for his left big toe, which had some blood under the nail, and recovered after a couple days of limping.

2

Likins's colleagues had pursued defendant at high speed. Eventually, defendant's bike failed, at which time he was arrested.

In connection with the San Bruno incident and a different high-speed chase that occurred in 2011, defendant was charged with two counts of evading a pursuing peace officer (Veh. Code, § 2800.2), battery upon a peace officer (Pen. Code, § 243, subd. (c)(2)),[1] and assault on a peace officer with a deadly weapon (other than a firearm) or by means of force likely to produce great bodily injury (§ 245, subd. (c)).

In September 2012, a jury found defendant guilty of all charges and also found true several sentence-enhancing allegations. In April 2013, the trial court granted a motion for new trial on the battery charge, but denied a new trial on assault. In response, the district attorney moved to dismiss the battery charge in the interest of justice. The trial court then sentenced defendant to a total term of 14 years eight months. For the assault alone, the primary offense, defendant received three years, which was doubled to six years because he had suffered a prior strike.

Defendant filed a timely notice of appeal and challenges only the assault conviction.

**DISCUSSION**

*Substantial Evidence*

Section 245 makes criminal an "assault with a deadly weapon or instrument, other than a firearm, or by any means likely to produce great bodily injury upon the person of a peace officer or firefighter" by one "who knows or reasonably should know that the victim is a peace officer or firefighter engaged in the performance of his or her duties, when the peace officer or firefighter is engaged in the performance of his or her duties . . . ." (§ 245, subd. (c).) "Assault" is defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.)

Although the definition of assault includes the word "attempt," assault is not a criminal attempt in the usual sense, and assault is not a specific intent crime. (*People v.*

---

[1] All further statutory references are to the Penal Code unless noted.

3

*Bailey* (2012) 54 Cal.4th 740, 750 ["criminal attempt and assault require different mental states"]; *People v. Colantuono* (1994) 7 Cal.4th 206, 215–216 [assault is not attempted battery and does not require specific intent to inflict a battery[2]]; *People v. Williams* (2001) 26 Cal.4th 779, 787–788 (*Williams*).)

Instead, "a defendant is . . . guilty of assault if he intends to commit an act 'which would be indictable [as a battery], if done, either from its own character or that of its natural and probable consequences.' . . . In other words, a defendant guilty of assault must be aware of the facts that would lead a reasonable person to realize that a battery would directly, naturally and probably result from his conduct. He may not be convicted based on facts he did not know but should have known. He, however, need not be subjectively aware of the risk that a battery might occur. (*Williams*, *supra*, 26 Cal.4th at pp. 787–788.) Thus, assault "does not require a specific intent to injure the victim" (*id.* at p. 788), and even a defendant who "honestly believes that his act was not likely to result in a battery is still guilty of assault if a reasonable person, viewing the facts known to defendant, would find that the act would directly, naturally and probably result in a battery" (*id.* at p. 788, fn. 3).

According to defendant, there was insufficient evidence of intent to convict him of assault. Defendant views the encounter with Likins as an accident and claims his intent was to leave the area, not to injure.

"In deciding claims of insufficient evidence, we review the entire record in the light most favorable to the prosecution 'to determine whether it contains evidence that is reasonable, credible, and of solid value, from which a rational trier of fact could find the defendant guilty beyond a reasonable doubt.' [Citation.] We do not resolve credibility issues or evidentiary conflicts. Instead, we presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence. [Citation.] 'A reversal for insufficient evidence "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support' " the

---

[2] Battery is the " 'willful and unlawful use of force or violence upon the person of another.' " (*People v. Shockley* (2013) 58 Cal.4th 400, 408, quoting § 242.)

jury's verdict.' [Citations.]" (*People v. Aznavoleh* (2012) 210 Cal.App.4th 1181, 1186 (*Aznavoleh*).)

There is sufficient evidence defendant intended to, and did, indeed, accelerate his motorcycle even though Likins was clutching his jacket. A reasonable juror could find that a "battery would directly, naturally and probably result" from defendant's intentional conduct. (*Williams*, *supra*, 26 Cal.4th at p. 788.) No further evidence of intent was required to prove an assault. (*Id.* at pp. 787–788; *Aznavoleh*, *supra*, 210 Cal.App.4th at pp. 1189–1190 [sufficient evidence of assault when "appellant made no effort to stop, slow down, or otherwise avoid a collision"]; accord, *Byrd v. Lopez* (E.D.Cal., July 31, 2012, No. 2:10-cv-2741 KJM JFM) 2012 WL 3205236 *1, *5 [on habeas review, agreeing with California court because "petitioner conceded . . . he became aware of Tran's presence on the hood as he drove" but "did not stop[,] . . . the jury could reasonably infer that when petitioner drove the car he was aware of facts sufficient to establish that the act of driving would probably and directly result in the application of physical force to Tran, who clung to the hood"].) In short, defendant's professed subjective intent that he did not mean to injure the officer was irrelevant.

Defendant also asserts the evidence is overwhelming that Likins was the reckless one in the scenario, and that in grabbing defendant, Likins put defendant and his passenger in danger. Defendant thus maintains Likins was no longer acting as a peace officer, and his own actions were taken in self-defense. (See *People v. White* (1980) 101 Cal.App.3d 161, 169 [reversing conviction when jury not instructed "regarding defendant's combined proffered defense of excessive force and self-defense"].) Defendant, however, is asking us to reweigh the evidence, which we may not do. (*Aznavoleh*, *supra*, 210 Cal.App.4th at p. 1186.) The jury heard all the testimony and the arguments of counsel, and was instructed, through a modified version of CALCRIM No. 2670, on defendant's theory he was innocent because Likins was acting unreasonably and with excessive force. The jury simply disagreed with defendant's take on the case, and substantial evidence supports its verdict.

5

*Evidentiary Ruling*

Defendant also seeks reversal on the ground the trial court improperly excluded testimony by his proffered expert, accident reconstructionist Robert Alaimo. Defendant asserts Alaimo would have helped establish that Likins's injury was an "accident," by testifying Likins was injured, not by the motorcycle running over his foot, but by some other incidental contact with the bike. The court excluded Alaimo's testimony on the ground his opinion lacked foundation and also appeared to be based on ordinary observation, not expertise.

As an initial matter, there is a more fundamental problem with Alaimo's proffered testimony. Whether Likins was injured by a tire, or another part of defendant's motorcycle, is simply irrelevant to whether Likins' injury was, as defendant claims, just an accident. Regardless of which part of the bike came in contact with Likins, *defendant's conduct* was the same, and it was on the basis of that conduct that the jury had to assess intent for purposes of assault. Accordingly, the exclusion of Alaimo's testimony was proper on threshold relevancy grounds. (See Evid. Code, § 210 ["relevant evidence is "evidence . . . having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action"].)

The trial court also did not abuse its discretion in concluding Alaimo's testimony lacked foundation and was an inadmissible lay opinion based on conjecture and ordinary experience. Alaimo's ultimate conclusion as to which part of defendant's motorcycle likely inflicted the injury did not relate to a subject "sufficiently beyond common experience," such that his opinion "would assist the trier of fact." (Evid. Code, § 801.) Nor did Alaimo provide any basis for his opinion, apart from ordinary observations made of a stationary motorcycle. He did not, for instance and as the trial court noted, run tests or make measurements involving the motorcycle in motion, as it was at the time of the incident. (See *People v. Richardson* (2008) 43 Cal.4th 959, 1008 [expert opinion based on conjecture and based on incomplete information not admissible because probative value outweighed by prejudice under Evidence Code section 352].) Accordingly, the trial acted within its discretion in refusing to allow Alaimo's testimony. (See *ibid.*)

6

**DISPOSITION**

The judgment of conviction is affirmed.

                                                 _____
                                                 Banke, J.

We concur:

_____
Margulies, Acting P. J.

_____
Becton, J.[*]

---

[*] Judge of the Contra Costa County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.