Filed 10/24/23  P. v. Sewell CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MICHAEL SEWELL,<br><br>    Defendant and Appellant. | D080594<br><br><br>(Super. Ct. No. SCD291124) |


APPEAL from a judgment of the Superior Court of San Diego County, Runston G. Maino, Judge.  Affirmed.

Heather L. Beugen, under appointment by the Court of Appeal for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley, Warren J. Williams and Junichi Semitsu, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Michael Sewell led San Diego police on a two-mile police chase that started on the Interstate 5 freeway and ended with Sewell driving into the Little Italy neighborhood.  In an hour-long standoff in which Sewell refused to comply with police commands to exit his car, the police set up a roadblock, spike strips behind Sewell's car, and a perimeter with yellow police tape to cordon off numerous onlookers who had begun to crowd near the scene.  But Sewell escaped—by driving his car onto a sidewalk and speeding through the police roadblock, striking the bumper of a news van and missing the pedestrians who ran away from the path of his oncoming car.

On appeal, Sewell asserts a single contention of error:  There was insufficient evidence he was aware of facts from which a reasonable person would realize his actions would directly and probably result in the application of physical force against another to support the jury's conviction for assault with a deadly weapon.  On this record, which includes several video recordings of the standoff and Sewell's escape, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

In the early afternoon of July 26, 2021, two San Diego Police Department officers were traveling southbound on Interstate 5 in a black-and-white-marked police car.  Sewell, driving a green sedan, sped past them in the same direction, going much faster than the flow of surrounding traffic.

---

[1]    Because Sewell's appeal implicates the substantial evidence standard of review, we summarize the evidence and state the relevant facts in the light most favorable to the judgment.  (*People v. Jennings* (2010) 50 Cal.4th 616, 638.)  Our summary of the facts includes our review of the video recordings admitted into evidence and viewed by the jury, including body-worn camera footage from a San Diego Police Department officer and a video taken by an onlooker showing an above-view of the crime scene from a nearby rooftop.

The officers accelerated and pulled behind Sewell to determine his speed—85 miles per hour. They turned on their lights and siren to initiate a traffic stop. But Sewell did not pull over. He continued speeding on the freeway for another one or two minutes. He then slowed down and moved over to take the exit onto Front Street. The officers pursued him into the Little Italy neighborhood, a popular tourist destination in San Diego.

After exiting the freeway, Sewell turned right onto Cedar Street at the first stop light. At the next intersection, Sewell turned right again, this time northbound onto Union Street. Sewell stuck his left hand out of the driver's side window of his car with an open palm, which the officers interpreted as a sign he was unarmed. He then turned left and stopped in a parking spot on Union Street that faced a sidewalk and house.

The officers parked their patrol car behind Sewell's car, got out, and drew their guns. One of the officers told Sewell to turn off his engine and show his hands. Sewell complied with both instructions, placing both hands outside the driver's side window. But he ignored a separate instruction to take the keys out of the ignition and throw them on the ground outside his car.

Backup police officers began arriving a couple minutes later. They parked at least four of their marked patrol vehicles around Sewell's car but did not block the front of the car because they did not know whether he was armed. Police officers placed spike strips behind Sewell's car. They blocked northbound travel onto Union Street with marked police vehicles at the intersection with Cedar Street. More than 10 marked police vehicles eventually arrived at the scene.

A large crowd of pedestrians surrounded the scene on nearby sidewalks and streets. To cordon off the onlookers from the standoff, police officers set

up a perimeter with yellow police tape. The police tape stretched across the northern side of the intersection of Union Street and Cedar Street.

For an hour, police officers commanded Sewell to get out of his car. Sewell refused. He told the officers he only wanted to receive a ticket and for the police to leave. In an attempt to get Sewell to comply, a SWAT officer deployed pepper spray through Sewell's driver's side window, following warnings to Sewell regarding its intended use. In response, Sewell rolled up the driver's side window, rubbed his face, and yelled profanities at the officers.

Sewell still refused to exit his car and persisted in the standoff with the police. The crowd of pedestrians continued to watch with interest from behind the police tape in the intersection of Union Street and Cedar Street. At some point, a white news van[2] showed up and parked in the intersection.

Next, after Sewell was warned, a SWAT officer shot a glass-breaking round at Sewell's back window so that police could place a pepper ball in the car. The round failed to break the window, bouncing off instead.

Sewell immediately started his engine. He jumped the curb in front of him and drove onto the sidewalk. He turned left—toward the crowded intersection of Union Street and Cedar Street—and sped southbound down the sidewalk, knocking over a sign. Sewell evaded the police roadblock by entering the intersection, forcing his car through a narrow gap between an unmarked police car and the news van. In the course, he struck the bumper of the news van with the passenger side of his car.

---

[2]    Although this fact has no effect on our resolution of the issues, both parties refer to the vehicle as a news "van" when photographs introduced at trial show it to be a Toyota Sequoia sports utility vehicle.

Around 10 to 20 pedestrians were standing next to the news van in the intersection as Sewell sped down the sidewalk. A police officer, who saw Sewell "driving towards the crowd of bystanders" next to the news van, testified he "ran towards [the bystanders] to yell at them to get back, get back, so they don't get struck." The officer thought Sewell's car was going to strike the bystanders. Hearing the officer's warnings, the pedestrians ran out of the path of Sewell's oncoming car as Sewell accelerated through the yellow police tape. He sped southbound on Union Street and escaped. None of the pedestrians were struck by Sewell's car. Sewell was arrested at his home two days later. Police officers found his car with damage to the passenger side.

The People filed an information charging Sewell with four counts: (1) assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1)); (2) evading an officer with reckless driving (Veh. Code, § 2800.2, subd. (a)); (3) hit and run driving (Veh. Code, § 20002, subd. (a)); and (4) resisting an officer (Pen. Code, § 148, subd. (a)(1)). The information alleged a vehicle was the deadly weapon used to commit the assault under Vehicle Code section 13351.5.

In May 2022, a jury convicted Sewell of counts one, three, and four. The jury also found true the allegation a vehicle was the deadly weapon used to commit the assault. The jury acquitted Sewell of count two, which the trial court had reduced to a misdemeanor charge (Veh. Code, § 2800.1, subd. (a)). The court granted Sewell two years of probation and ordered him to serve 136 days in county jail, with credit for time served. The court permanently revoked his driver's license.

## DISCUSSION

Because Sewell challenges the judgment for sufficiency of the evidence, "we review the whole record in the light most favorable to the judgment to

determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Stanley* (1995) 10 Cal.4th 764, 792.) We presume in support of the judgment the existence of every fact the trier of fact could reasonably deduce from the evidence. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.) We do not substitute our judgment for that of the jury or reverse merely because the evidence might also reasonably support a different finding. (*Ibid.* [" 'A reviewing court neither reweighs evidence nor reevaluates a witness's credibility.' "]; *Stanley*, at p. 793.) We do not reverse " 'unless it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" ' the jury's verdict." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.)

Assault is a general intent crime. (*People v. Williams* (2001) 26 Cal.4th 779, 788.) It "does not require a specific intent to cause injury or a subjective awareness of the risk that an injury might occur. Rather, assault only requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its nature will probably and directly result in the application of physical force against another." (*Id.* at p. 790.) In other words, a defendant "must be aware of the facts that would lead *a reasonable person* to realize that a battery would directly, naturally and probably result from his conduct." (*Id.* at p. 788, italics added.) Although a defendant may not be convicted for assault because of recklessness or negligence, he need *not* be "subjectively aware of the risk that a battery might occur." (*Ibid.*)

Assault with a deadly weapon "is an unlawful attempt, coupled with a present ability, to commit a violent injury" on another person "with a deadly weapon or instrument other than a firearm." (Pen. Code, §§ 240, 245, subd. (a)(1).) A vehicle can be a "deadly weapon" based on the manner in

6

which it was used.  (*People v. Perez* (2018) 4 Cal.5th 1055, 1065–1066; *People v. Bipialaka* (2019) 34 Cal.App.5th 455, 458.)  The trial court correctly instructed the jury on the elements of assault with a deadly weapon.  It was instructed the People must prove that "1. The defendant did an act with a deadly weapon other than a firearm that by its nature would directly and probably result in the application of force to a person; [¶] 2. The defendant did that act willfully; [¶] 3. When the defendant acted, he was aware of facts that would lead a reasonable person to realize that his act, by its nature, would directly and probably result in the application of force to someone; [¶] 4. When the defendant acted, he had the present ability to apply force with a deadly weapon other than a firearm to a person."  The jury was also instructed that "[t]he People are not required to prove that the defendant actually intended to use force against someone when he acted.  [¶]  No one needs to actually have been injured by [the] defendant's act."

Sewell's challenge to the sufficiency of the evidence focuses only on the third element.  He contends substantial evidence does not support his conviction for assault with a deadly weapon because the evidence failed to establish he was aware of sufficient facts that would lead a reasonable person to believe his actions would directly and probably result in the application of force to someone.  In support of his contention, he argues "there is no evidence [he] was aiming for anyone" when he sped away, that he "intended to smash his car into anyone, nor did he strike any of the pedestrians who were standing in the middle of Cedar Street."  But as we have just explained, the crime does not require proof he intended to use force or cause injury to anyone.  Sewell also argues the facts of a few other cases finding sufficient evidence of the third element, like *People v. Aznavoleh* (2012) 210 Cal.App.4th 1181 and *People v. Brugman* (2021) 62 Cal.App.5th 608, "are

much, much stronger than the facts at issue in this case."  That the facts in another case might be stronger does not, however, demonstrate the evidence here is insufficient.  To the contrary, the record before us provides substantial evidence from which a jury could find Sewell guilty of assault with a deadly weapon.

Substantial evidence demonstrated Sewell had the capacity to appreciate and understand what was happening throughout the hour-long standoff he caused with the police.  He exited the freeway in response to the police lights and sirens behind his car.  He navigated multiple turns after exiting the freeway before parking in a designated parking spot on Union Street.  He selectively complied with certain of the police officers' instructions, including turning off his car engine and putting his hands out of the window.  In response to a police officer deploying pepper spray into his car, he rolled up the window, rubbed his face, and yelled profanities at the officers.  In response to the unsuccessful glass-breaker shot to his back window, Sewell turned on his car engine, jumped the curb, and drove onto a sidewalk.  He then navigated the sidewalk, maneuvered his car through a small gap between a police vehicle and the news van to break through the police roadblock, and successfully escaped by speeding through the intersection of Union Street and Cedar Street.  A jury could reasonably conclude from Sewell's choices and actions that he was aware of his surrounding circumstances.

Sewell contends "there is no evidence" he knew or could see the pedestrians in or near the intersection of Union Street and Cedar Street "at the time he drove along the empty sidewalk," or "at the time he drove through the space between the two parked cars, or even as he accelerated."  We disagree.  There was strong circumstantial evidence that Sewell had both

a line of sight and ample opportunity to see the crowd of pedestrians he drove directly at to escape the police roadblock. As the court instructed the jury, facts—including the defendant's mental state—may be proven by circumstantial evidence alone. (See *People v. Bloom* (1989) 48 Cal.3d 1194, 1208 ["Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction."].)

The evidence, including a map of the scene and the video recording taken by an onlooker atop a roof overlooking the scene, demonstrated that Sewell travelled approximately a third of a block down the sidewalk from his parking space on Cedar Street to the intersection with Union Street. The police body-worn footage provided a vantage point of the officer standing in the intersection looking down Union Street to where Sewell sat in his car for an hour; from that footage the jury could see Sewell's parked car. A jury viewing this evidence could reasonably conclude that *from Sewell's vantage point*, looking down the short distance to the intersection he used to escape, that Sewell could see the heavy police presence, the yellow police tape, and the crowd of pedestrians that had gathered behind the police tape to look.

Further still, the video evidence demonstrated that as Sewell accelerated toward the intersection, he had the distance of approximately a third of a block and plenty of time to see the crowd of pedestrians in the intersection as he drove directly toward them. Indeed, the video evidence showed Sewell's car came within a few feet of a police officer on one side and the pedestrians on the other. Even if Sewell somehow was not aware of the pedestrians when he jumped the curb and began driving down the sidewalk, the jury could reasonably conclude he became aware of the pedestrians (and the police officer) in the intersection as he drove down the sidewalk and in

9

the gap between the news van and a police vehicle and accelerated through the police tape.  Viewing the evidence in the light most favorable to the judgment, we conclude this is substantial evidence to support the jury's verdict that Sewell committed assault with a deadly weapon, to wit his vehicle.

## DISPOSITION

The judgment is affirmed.


DO, J.

WE CONCUR:


DATO, Acting P. J.


KELETY, J.