Filed 3/28/24  P. v. Thomas CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B326905 |
| Plaintiff and Respondent, | Los Angeles County Super. Ct. No. VA061057 |
| v. | |
| WILLIAM ARTHUR THOMAS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, William C. Ryan, Judge.  Affirmed.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Roberta L. Davis and Gabriel Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

—————————————

William Arthur Thomas appeals the order denying his petition for resentencing under the Three Strikes Reform Act of 2012 (the Act), also known as Proposition 36. (See Pen. Code, § 1170.126; *People v. Perez* (2018) 4 Cal.5th 1055, 1059 (*Perez*).) We affirm. Substantial evidence supports the trial court's ruling Thomas was armed with a deadly weapon during the commission of the underlying crime. Undesignated statutory citations are to the Penal Code.

I

We provide a brief overview of the extended proceedings leading up to, and relevant to, this ruling. Instead of repeating the facts from our earlier decision affirming Thomas's convictions, we incorporate them here. (See *People v. Thomas* (May 6, 2002, B148325) 2002 WL 853848.)

As noted in that decision, a jury convicted Thomas of kidnapping a child under 14 (§ 208, subd. (b)), indecent exposure (§ 314(1)), and evading an officer with willful disregard for safety (Vehicle Code, § 2800.2, subd. (a).) The jury also found Thomas had 20 prior robbery convictions.

In 2001, the trial court sentenced Thomas under the Three Strikes Law to consecutive terms of 25 years to life in prison on the kidnapping and evasion counts, and to 180 days in county jail for the indecent exposure count. The court added 15 years under section 667, subdivision (a)(1), for prior serious felony convictions.

We affirmed Thomas's convictions in 2002. Twelve years later, Thomas filed his resentencing petition under the Act. Only the evasion count is the subject of Thomas's petition and this appeal.

The Act gives certain inmates serving a Three Strikes term the potential for resentencing, provided the statutory eligibility

criteria are met and no exclusion applies.  (See § 1170.126, subd. (e); *People v. Cruz* (2017) 15 Cal.App.5th 1105, 1109 (*Cruz*).)

We first addressed Thomas's petition in 2016, ultimately reversing and remanding the matter to the trial court in light of *People v. Johnson* (2015) 61 Cal.4th 674.  (See *People v. Thomas* (Jan. 14, 2016, B263376) 2016 WL 193474.)

After various delays, the district attorney opposed Thomas's resentencing petition on the basis of *Perez*, arguing Thomas had been armed with a deadly weapon during the commission of the current offense (evading a police officer).  This is one of the exclusions rendering an inmate ineligible for resentencing under the Act.  (See § 1170.12, subd. (c)(2)(C)(iii); *Cruz*, *supra*, 15 Cal.App.5th at p. 1109.)

After a hearing, the trial court found Thomas ineligible for resentencing on this ground beyond a reasonable doubt.  (See *Perez*, *supra*, 4 Cal.5th at pp. 1059 & 1062 [prosecution's burden is proof beyond a reasonable doubt].)  The court denied the petition in an eleven-page memorandum of decision.  The court explained it could not "be disputed that Petitioner was [driving] in such a way that great bodily injury to one, or many, of the pedestrian- and driver-bystanders was likely to occur." "Petitioner was driving at high rates of speed for most of the chase, including 75 miles per hour in a residential area that contained an elementary school, and 35 miles per hour over speed bumps in a crowded shopping center parking lot with pedestrians.  Petitioner failed to yield to stop signs and red lights where cross traffic had to [swerve] to avoid colliding with him, and at one point cars collided with each other in an attempt to avoid Petitioner's car."  The court recognized only the "attentiveness" of pedestrians and other drivers "saved them

from suffering great bodily injury caused by Petitioner's egregious and erratic driving."

On appeal, Thomas contends the evidence was insufficient to support this ruling.

## II

Cars can be deadly weapons. This law is venerable. (*People v. Bipialaka* (2019) 34 Cal.App.5th 455, 458.)

*Perez* applies this law to the context of resentencing eligibility under the Act. There, the Supreme Court found defendant Perez ineligible for resentencing where, in attempting to flee from the scene of a robbery, he dragged a pursuing store clerk with his truck. Perez reversed the truck for a ways at 10-20 miles per hour while the clerk's arm was stuck inside the truck. The victim pulled himself free when Perez drove forward. He suffered a few scrapes. (*Perez*, *supra*, 4 Cal.5th at pp. 1059–1060.) A jury convicted Perez of assault with force likely to produce great bodily injury. (*Id.* at p. 1060.) Our high court found Perez ineligible for relief under the Act because he was armed with a deadly weapon (the truck) during the assault. (*Id.* at p. 1059.) The court held it was permissible to "rely on facts not found by a jury" in making this determination. (*Id.* at pp. 1059 & 1063.)

According to the court, "armed" means having a weapon available for use, either offensively or defensively, whereas a "deadly weapon" is an object used in a way that is capable of producing and likely to produce death or great bodily injury. (*Perez*, *supra*, 4 Cal.5th at p. 1065.) Cars, while not deadly per se, may be used in this manner. A fact finder may consider the nature of the object, how it is used, and all other relevant facts in making the deadly weapon determination. (*Ibid.*)

4

Using *Perez* as our guide, we hold substantial evidence supports the trial court's ruling Thomas was armed with a deadly weapon when he evaded police.  (See *Perez*, *supra*, 4 Cal.5th at pp. 1059 & 1066 [reviewing court defers to trial court's eligibility determination if supported by substantial evidence].)  We draw from the trial testimony, and we present the facts in favor of the prosecution.  (See *Cruz*, *supra*, 15 Cal.App.5th at p. 1110 [trial testimony is part of the record of conviction that may be consulted in ruling on these resentencing petitions].)

After releasing his kidnapping victim near a convenience store, Thomas led police on a reckless, high-speed chase from La Habra to Brea a little after 8:30 p.m.

It started when Thomas abruptly pulled out of a parking lot in front of police in an unmarked car.  The police followed Thomas as his car sped up, fishtailed, drove in a bicycle lane to pass other cars, and ran a red light.

A marked police car with lights flashing pulled in behind Thomas.  Thomas took off, reaching speeds of 70-75 miles per hour.  He entered a residential area—with a speed limit of 25 miles per hour—going at least twice the limit.  Thomas flew through a four-way stop and nearly hit a car with the right of way.  Another car had to drive onto a curb to avoid Thomas, who was "all over the road," driving erratically from one side to the other.

Thomas continued ignoring stop signs.  Eventually, he pulled into a busy shopping center.  Despite speed bumps and pedestrians in the parking lot, Thomas kept his speed at about 35 miles per hour.  People were entering and leaving the center's movie theater at the time.  They scattered and ran to avoid being hit.

5

When Thomas got back onto a main street, he accelerated, ran several red lights, weaved in and out of traffic, and reached speeds of 80 miles per hour. At one heavily congested intersection, Thomas slammed on his brakes. He sailed through the intersection and avoided a collision "[b]y the grace of God." The pursuing officer thought "for sure [ ] we were going to have a really big crash at that point[.]"

Thomas kept going. He turned into oncoming traffic. Then he hit the center median and blew out two tires. Two cars swerved to avoid him and crashed into each other. Even then, Thomas kept driving on the wrong side of the road.

With the flat tires reducing his speed, Thomas pulled into a church parking lot full of churchgoers leaving a service. Then he fled on foot.

Thomas used his car in a way that qualified it as a deadly weapon. It was not necessary for Thomas to have struck a victim or intended to hurt someone. Thomas's prolonged escapade posed an extreme risk of great bodily injury and made this injury likely. That suffices. (See *Perez, supra,* 4 Cal.5th at pp. 1065 & 1067; see also *In re B.M.* (2018) 6 Cal.5th 528, 530 & 535 (*B.M.*) ["it is appropriate in the deadly weapon inquiry to consider what harm could have resulted from the way the object was actually used. . . . [T]he evidence may show that serious injury was likely, even if it did not come to pass"].)

The extent of *actual* injury or lack of injury is relevant, but "an aggressor should not receive the benefit of a potential victim fortuitously taking a defensive measure . . . ." (*B.M., supra,* 6 Cal.5th at pp. 535 & 537.) Thomas's conduct "could have resulted in the wiping out of pedestrians or entire families lawfully

crossing intersections on green lights . . . ." (*People v. Aznavoleh* (2012) 210 Cal.App.4th 1181, 1190.)

It does not matter that only police witnesses testified about his driving. The evidence showed Thomas put many lives at risk.

Thomas emphasizes *Perez* involved a conviction for aggravated assault, but this case has nothing like that; nor does this case involve allegations Thomas was armed with a deadly weapon or inflicted great bodily injury. But no particular offense or enhancement is required to be disqualified from resentencing, and a defendant need not be sentenced on a disqualifying factor. (*See People v. Hicks* (2014) 231 Cal.App.4th 275, 285.) Courts ruling on these petitions may look beyond the elements of the current offense and may consider all relevant, reliable, and admissible parts of the record to determine whether disqualifying factors exist. (*Cruz, supra*, 15 Cal.App.5th at p. 1110.)

Both the prosecution and the defense cite cases involving cars or trucks, which they argue bolster their position. The parties' cases are factually distinct, and a discussion of those different facts is unnecessary to resolve this appeal.

Thomas argues for our independent review of the record and for no deference to the trial court's factual findings. *Perez* decided substantial evidence—with deference—is the proper standard. (*Perez, supra*, 4 Cal.5th at pp. 1059 & 1066.)

Thomas states a fear that to rule against him will mean all police evasion convictions will result in ineligibility under the Act. *Perez* made clear, and we reaffirm today, that disqualification depends on the facts of the case. (See *Perez, supra*, 4 Cal.5th at pp. 1059, 1065 & 1068.)

## DISPOSITION

We affirm the order denying the resentencing petition.

WILEY, J.

We concur:

STRATTON, P. J.

GRIMES, J.

8